# SUPERIOR COURT OF BALTIMORE CITY.

Filed June 11, 1925.

VIOLA BUSH, AN INFANT, BY HER NEXT FRIEND, MADLINE CONNLEY,
VS.
THEODORE MOTTU & CO.

*Julius P. Robinson* and *James J. Lindsay* for plaintiffs.

*Marbury, Gosnell & Williams* for defendant.

FRANK, J.—

The infant plaintiff who was born on September 7, 1904, was seriously injured under circumstances which exposed the defendants to a claim for damages. In order to comprise her claim an action was brought under the provisions of Section 60, of Article 75, of the Code (1924). Both of the parents of the plaintiff were dead and the action was brought in the name of her maternal grandfather, Charles Hall, as her next friend. Proceedings were had as prescribed in said section, an agreement of compromise of the cause of action for $350 was entered into and the case entered "agreed and settled." This was done on October 3rd, 1921, without the knowledge of the plaintiff who all the time was in the hospital as a consequence of her injuries. On February 17, 1925, a motion to annul and strike out the said proceedings was filed by the plaintiff, still an infant, through another next friend.

The grandfather of the plaintiff purported to act *in loco parentis* and, therefore, as prescribed by said Section 60, the authority of the Orphans' Court of Baltimore City for said settlement was not regarded as necessary and was not obtained.

The testimony taken at the hearing convinces me that from the time of the death of plaintiff's surviving parent, her mother and the daughter of Charles Hall, the latter assumed charge of her, supporting her and acting in *loco parentis*. He testified that he paid her board until 1921, but that the accident happened "after she took womanhood on herself," that she would not stay anywhere he put her, just went where she chose, that he did not know where she was staying at the time she was hurt, that she had been a very unruly child from birth up, that he never could hold tight reins on her and never could keep her in any place at all. He further stated that he did not think that the defendant was responsible for the injury to the plaintiff and that she was not entitled to anything, that he was satisfied to get anything that he could for her. "I was not real interested; I did not care whether she got any or didn't get any" * * *.

"* * * if you have got a child and she don't pay no attention and no heed to you, and don't take care of nothing that you give her, and you put her at a place where she will do well and she will leave that and she will go to some place else and you have no satisfaction in her, and she does anything like that and if she gets into other mischief and if she comes in here and says, I fell and broke my leg, when she went where she had no business to go, you say it serves her right" (page 22 of Charles Hall's testimony).

He further testified (pages 23 and following), that he put her out of his house on account of her misconduct and that for at least two months prior to the accident he did not know where or with whom she was living. After he had made the settlement he for the first time told her about it (page 26).

It thus appears from the testimony of the defendants' own witness, Charles Hall, and without taking into account the testimony offered by the petitioner.

1st. That for a period of at least two months prior to the accident, Hall

had not seen the plaintiff, did not know where she was, had no responsibility for her, assumed none and paid nothing whatever to her or for her support.

2nd. That he conducted the negotiations for the settlement of her claim for damages without her knowledge and actually consummated the settlement without communicating with her and without her knowledge.

3rd. That his attitude with respect to the settlement was that she had no claim and was entitled to nothing, although he did not know what story she or her witnesses would tell and although he never sought or had legal advice with reference to her rights.

Under all the testimony, I conclude that at the time of the settlement herein, Charles Hall was not actually *in loco parentis* as to the infant plaintiff, and that, in consequence the authority of the Orphans' Court of Baltimore City was requisite to render the settlement a valid one and binding upon the infant. I shall accordingly strike out the order of "agreed and settled," filed herein on October 3rd, 1921, reserving for future determination all questions as to the future disposition of this controversy.